## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

BURTON SURRENCY
a/k/a BARTON C. SURRENCY,[1]

      Petitioner,

vs.                              Case No. 8:04-CV-1579-T-30EAJ

LUCY HADI,[2] Secretary,
Florida Dep't. of Children and Families,

      Respondent.
_____/

## ORDER

     Before the Court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. §

2254 (Dkt. 1). Petitioner filed his petition as a convicted state felon currently being housed

as a civil commitment resident at the Florida Civil Commitment Center under the

Involuntary Civil Commitment of Sexually Violent Predators Act ("Jimmy Ryce Act"),[3] Fla.

_____

[1]The Court takes judicial notice of information available at the Florida Department of Corrections Information Network, http://www.dc.state.fl.us/, viewed October 25, 2006, stating that Petitioner was committed under the name Barton C. Surrency, Inmate No. 140759. *See* Fed. R. Evid. 201. *See also* Dkt. 2 at 5-6.

[2]Lucy Hadi, Secretary of the Florida Department of Children and Families, is substituted as the proper party respondent for Jerry Reiger pursuant to Rule 25(d) of the Federal Rules of Civil Procedure .

[3]The Florida legislature enacted the Jimmy Ryce Act, §§ 394.910-.913, Fla. Stat., by which a person determined to be a sexually violent predator is required to be housed in a secure facility "for control, care, and treatment until such time as the person's mental abnormality or personality disorder has so changed that it is safe for the person to be at large." § 394.917(2). The Jimmy Ryce Act was promulgated for the dual purpose "of providing mental health treatment to sexually violent predators and protecting the public from these individuals." *Westerheide v. State*, 831 So.2d 93, 112 (Fla. 2002); *see also Kansas v. Hendricks*, 521 U.S. 346 (1997) (holding that the Kansas Sexually Violent Predator Act did not establish criminal proceedings, and involuntary confinement pursuant to the Act was not punitive). Thus, involuntary commitment of sexually violent predators under the Ryce Act is accomplished by a civil, rather than a criminal proceeding. In its statement of "findings and intent," the state legislature said that the Act was aimed at "a small but extremely dangerous number of sexually violent predators . . . who do not have a mental disease or defect that renders
(continued...)

Stat. § 394.910. Petitioner challenges his 2001 civil commitment as a sexually violent predator,[4] entered in the Sixth Judicial Circuit Court, Pinellas County, Florida. Respondent has filed a response to the petition (Dkt. 22), and Petitioner has filed a reply thereto (Dkt. 18). The matter is now before the Court for consideration on the merits of the petition. An evidentiary hearing is not required for the disposition of this matter. Rules Governing Section 2254 Cases 8(a) (2006).

**Background**

On August 21, 1994, Petitioner lured a 5-year-old girl into an alley, where he "lay on her, pulled aside her shorts and panties, and anally penetrated her." Dkt. 1, Attach. at 7. When confronted about the incident, Petitioner initially denied the child's allegations, but later confessed his guilt to the police.  Petitioner pled guilty to the charge of sexual battery by an adult with a victim under the age of 12, and on December 5, 1994, he was sentenced to a term of 5 years imprisonment, to be followed by a 5-year term of probation, with outpatient sex offender treatment (Dkt. 11, Ex. 1).  *State v. Surrency*, Case No. CRC 94-15363 CFANO-B (Fla. 6th Jud. Cir. Court. 1994).  Because Petitioner was 15 years old when placed in the custody of the Florida Department of Corrections ("DOC") on December

---

(...continued)
them appropriate for involuntary treatment under the Baker Act (§§ 394.451-394.4789, Fla. Stat.)." § 94.910, Fla. Stat. (2000).

Subsequent to commitment, persons classified under the Ryce Act are periodically examined, at least annually, and a determination is to be made whether a committed person may be released safely. § 394.918, Fla. Stat. (2000). Additionally, persons committed under the Ryce Act have the right to petition for release. § 394.918(2), Fla. Stat. (2000). The state bears the burden of proving by clear and convincing evidence that the person's mental condition requires continued confinement. § 394.918(4), Fla. Stat. (2000).

[4]A "sexually violent predator" is defined by the Ryce Act as "any person who: (a) has been convicted of a sexually violent offense; and (b) suffers from a mental abnormality or personality disorder that makes the person more likely to engage in acts of sexual violence if not confined in a secure facility for log-term control, care, and treatment." § 394.912(10), Fla. Stat. (2002).

14, 1994, he was placed in lockdown to protect him from the general prison population. Petitioner was held in close custody for 3 years.  Petitioner acknowledges that during his incarceration, he received numerous disciplinary reports. Testimony during the civil commitment proceedings revealed that Petitioner had received 49 disciplinary reports of sexually inappropriate behavior and disorderly conduct.

When Petitioner was released from prison on September 13, 1999, the State filed a Petition for Civil Commitment & Request for Probable Cause Determination of Barton Surrency[5] pursuant to Fla. Stat. §§ 394.910-394.930 (Dkt. 11, Ex. 1). The Order Determining Probable Cause was entered by the state circuit court on September 13, 1999 (Dkt. 11, Ex. 2), and Petitioner was taken into custody by the DCF, which is responsible for operating appropriate commitment facilities within the state. Initially transferred to the Martin Treatment Center, because Petitioner failed to request treatment, he was moved to a Jimmy Ryce facility physically located within the grounds of the South Bay Correctional Institution ("South Bay"). *See Garner v. State*, 839 So.2d 924 (Fla. 4th DCA 2003) (discussing DCF facilities operating within the confines of a DOC facility). Without

---

[5]Under the Jimmy Ryce Act, the agency having custody of a person convicted of a sexually violent offense must provide certain information to a multi-disciplinary team and the state attorney in the circuit where the person was last convicted of the sexually violent offense prior to the persons release from confinement. Fla. Stat. § 394. 913(1)(a). "A written assessment of whether the person meets the definition of a sexually violent predator" is made by the multi-disciplinary team and provided to the state attorney. Fla. Stat. § 394. 913(3)(e). After review, the state attorney "may file a petition with the circuit court alleging that the person is a sexually violent predator and stating the facts sufficient to support such allegation." Fla. Stat. § 394.914. The circuit shall "determine whether probable cause exists to believe that the person ... is a sexually violent predator." Fla. Stat. § 394.915(1). If the court finds that probable cause exists, then the person is placed into the custody of the Department of Children and Families ("DCF") and held "in a secure facility without opportunity for pretrial release or release during the trial proceedings," even though the person has already completed his criminal sentence for the underlying sexual offense. Fla. Stat. § 394.915(5). The person is entitled to a trial within thirty (30) days of the probable cause determination, Fla. Stat. § 394.916(1), and is entitled to the assistance of counsel, and the appointment of counsel if indigent. Fla. Stat. § 394.916(3). The trial is civil in nature, and requires the State to prove by clear and convincing evidence that the person qualifies as a sexually violent predator. Fla. Stat. § 394. 917(1).

disclosing the nature of the alleged offending conduct, Petitioner states that while at South Bay, he was charged with violation of probation.

When Petitioner was found not guilty of the violation of probation charge, he was released from South Bay.  Upon release, Petitioner moved in with his girlfriend and her children. Twenty-eight days later, Petitioner was taken into custody and returned to South Bay. Petitioner filed a demand for an adversarial probable cause hearing on September 30, 1999 (Dkt. 11, Ex. 3). Following the adversarial probable cause hearing, the state circuit court issued an order finding probable cause to believe Petitioner was a sexually violent predator, as defined by statute, and again ordered Petitioner's detention (Dkt. 11, Ex. 5).

In March 2001, Petitioner was transferred to the Florida Commitment Center, located in Desoto County, where he consented to treatment. On October 23, 2002, a jury found by unanimous verdict that Petitioner was a sexually violent predator (Dkt. 11, Ex. 23). Pursuant to the jury's verdict, the state circuit court ordered Petitioner to be confined in the Florida Civil Commitment Center for long-term control, care, and treatment (Dkt. 11, Ex. 24). On November 6, 2002, Petitioner appealed the jury verdict, raising the following claims:

1. The trial court's admission of evidence of diagnostic criteria without a *Frye* hearing, over [Petitioner's] objection, was harmful reversible error;

2. Admission of out-of-court statements over Petitioner's objection to prove the state's case was reversible error;

3. Where [Petitioner] had been released from incarceration after expiration of his sentence, the trial court was without jurisdiction to commit him under Fla. Stat. §§ 394.910-394.931 [the Jimmy Ryce Act]; and

4. The trial court erred in overruling [Petitioner's] motion for a mistrial where it was clear to the jury that appellant had to be shackled during an interview with the doctor.

Dkt. 11, Ex. 26. The state district court affirmed Petitioner's commitment *per curium* (Dkt.

11, Ex. 28). *See Surrency v. State*, 869 So. 2d 553 (Fla. 2d DCA 2003). The mandate issued on February 3, 2004.

Petitioner filed a timely petition for federal habeas relief on July 7, 2004. Having carefully reviewed the record, applicable statutes, and controlling case law, being duly apprised of the arguments presented by the parties, for reasons set forth *infra*, the Court finds that Petitioner has not demonstrated that he is entitled to federal habeas relief.

## Standard of Review

A federal habeas petitioner must present his claims to the state courts before raising them in federal court. "[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971). *Accord*, *Rose v. Lundy*, 455 U.S. 509, 518-19 (1982) ("A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error."), and *Upshaw v. Singletary*, 70 F.3d 576, 578 (11th Cir. 1995) ("[T]he applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated.").

Moreover, federal habeas corpus review is limited to violations of federal constitutional rights, not asserted violations of state law or procedure. As explained by the Eleventh Circuit:

> A federal habeas petition may be entertained only on the ground that a petitioner is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved. *Bronstein v. Wainwright*, 646 F.2d 1048, 1050 (5th Cir. 1981). State courts are the ultimate expositors of their own

state's laws, and federal courts entertaining petitions for writs of habeas corpus are bound by the construction placed on a state's criminal statutes by the courts of the state except in extreme cases. *Mendiola v. Estelle*, 635 F.2d 487, 489 (5th Cir. 1981).

*McCullough v. Singletary*, 967 F.2d 530, 535-36 (11th Cir. 1992), *cert. denied*, 507 U.S. 975 (1993).

## Discussion

Since Petitioner's civil commitment as a sexually violent predator was entered after the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") was enacted, his petition is subject to the provisions thereof. In his habeas petition, Petitioner recites the claims raised on direct appeal, verbatim, prefacing each claim with the allegation that he has been subjected to a "violation of [the] constitutional clause against loss of liberty without due process of law" (Dkt. 1 at 5-7, and 9). Petitioner refers this Court to the brief filed on direct appeal as support for his petition. As discussed below, Petitioner failed to "articulate" any federal constitutional theory in support of his request for relief in his appellate brief. *See Gray v. Netherland*, 518 U.S. 152, 163 (1996).

In Ground One, Petitioner contends that the state circuit court erred in allowing the state to adduce testimony that he was likely to reoffend if he was not confined without first conducting a *Frye* hearing. During trial, when the state elicited testimony regarding the risk factors Doctor Pritchard considered in reaching his opinion that Petitioner is a sexually violent predator likely to reoffend if not confined, Petitioner's counsel objected, stating: "Objection, Frye." The objection was overruled. On direct appeal, appellate counsel argued that testimony regarding the diagnostic criteria profile did not meet the test announced in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923) (Dkt. 11, Ex. 26 at 13-18). In its decision affirming the state circuit court's decision, the appellate court implicitly rejected this argument.

While Petitioner asserts in his petition that the state circuit court's ruling was a violation of his constitutional right to due process, in his appellate brief, attached as an exhibit to the petition, Petitioner did not advance a federal due process argument (Dkt. 1, Attach. at 14).

Petitioner's entire argument on this claim in state court was based on the standard employed under Florida law to determine the admissibility of testimony regarding scientific testimony (Dkt. 23, Ex. 001 at 20-24). The only reference to federal law[6] he made was to the test enunciated in *Frye v. United States*, *supra*, as the standard adopted by Florida in *Stokes v. State* requiring the proponent of expert scientific testimony to show that the conclusions advanced by the proposed witness were generally accepted in the relevant scientific community. 548 So.2d 188, 195 (Fla. 1989).

In 1993 the United States Supreme Court interpreted Fed. R. Evid. 702 as superseding the traditional rule announced in *Frye. See Daubert v. Merrell Dow Pharm.,*

---

[6] Petitioner included a second federal case on his list of Authorities cited in support of the appellate brief. A review of the brief revealed that Petitioner relied on the underlined portion of the following passage in support of Ground One in his appellate brief:

Following the approach of both the Utah Supreme Court in *Rimmasch* and Florida courts in *Stokes v. State*, 548 So.2d 188 (Fla. 1989; *Bundy v. State,* 471 So.2d 9 (Fla. 1985), *cert. denied*, 479 U.S. 894, 107 S.Ct. 295, 93 L.Ed.2d 269 (1986); and *Hawthorne v. State*, 408 So.2d 801 (Fla. 1st DCA), *review denied*, 415 So.2d 1361 (Fla. 1982), I similarly find a <u>lack of consensus in relevant judicial opinions to support a view that the profile of a typical child molester is generally accepted in the relevant scientific community as a predictor of child sexual abuse." *Accord United States v. St. Pierre*, 812 F.2d 417, 420 (8th Cir. 1987) (trial court properly refused to appoint exper5t to examine defendant for the purpose of determining whether he fit a sex-offender profile that was not generally accepted by scientific community).</u>

*Flanagan v. State*, 586 So.2d 1085, 112-113 (Fla. 1st DCA 1991) (Ervin, J. concurring in part and dissenting in part). In reviewing the *Flanagan* decision, the Florida Supreme Court found as follows: "After examining relevant academic literature and case law, we find that sexual offender profile evidence is not generally accepted in the scientific community and does not meet the *Frye* test for admissibility. For an excellent and thorough discussion of this issue, see Judge Ervin's opinion below." *Flanagan v. State*, 625 So.2d 827, 828 (Fla. 1993). Although Judge Ervin cites *United States v. Pierre* as being in accord with his conclusion that there was a lack of consensus within the judiciary regarding the acceptance of profiles of the typical child sexual molester within the scientific community, when considered in context, the Court concludes that Judge Ervin's opinion resets on state court decisions. Thus, the *Flanagan* case does not constitute "a case deciding . . . a claim on federal grounds. *See Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

*Inc.*, 509 U.S. 579, 588-592 (1993). Under the *Daubert* test, the scientific facts to which an expert testifies need no longer achieve general acceptance in the scientific community to be admissible in federal court; rather, the proponent need only demonstrate that the investigatory methods employed by the proposed expert witness are consist with generally accepted methods of scientific investigation. *Id.* As the Florida Supreme Court pointed out in *Spann v. State*, Florida does not follow *Daubert.* 857 So.2d 845, 852 (Fla. 2003). The Court concludes that Petitioner's reference to *Frye* does not satisfy the requirement that he present the federal dimension of his claim to the state courts.

Finally, Petitioner's reliance on *Henry v. Dep't of Corrs.*, 197 F.3 1361 (11th Cir. 1999), in support of his argument that his claims are properly exhausted is misplaced. As the *Henry* court recognized, "[i]n *Gray v. Netherland*, 518 U.S. 152, 163 (1996), the Supreme Court reiterated that in order to exhaust state remedies, petitioners must do more than present 'the state courts only with the facts necessary to state a claim for relief' and must additionally articulate the constitutional theory serving as the basis for relief." *Henry v. Dep't. of Corrs.*, 197 F.3d at 1366. Petitioner did not "articulate" any constitutional theory in support of his request for relief in his appellate brief.

In Ground Two, Petitioner asserts that the state circuit court erred in allowing the state to adduce testimony regarding "'out-of-court' statements of disciplinary reports into evidence" (Dkt. 1, Attach. at 19). Citing *Jenkins v. State*, 803 So.2d 783 (Fla. 5th DCA 2002), Petitioner argues that "admission of unsworn allegations of misconduct, without the opportunity to confront the witness making the statement violates the respondent's right to a fair trial." *Id.* The only reference Petitioner made in his appellate brief to the federal constitution is found in Petitioner's argument in support of Ground 2 that "reversible error . . . denied [Petitioner's] rights to confrontation, due process, and a fair trial under the

Florida and United States' [sic] Constitution" (Dkt. 1, Attach. at 19). A passing reference to the federal Constitution, without articulation of the federal dimension of a claim, does not satisfy the requirement that the claim be "fairly presented" in the state courts enunciated in *Snowden v. Singletary* and its progeny.  135 F.3d 732, 735 (11th Cir. 1998).

As to Ground Three, Petitioner relies on the decision in *State v. Atkinson*, 831 So.2d 172 (Fla. 2002), in support of his claim that because his "prison sentence for the index [sic] offense had expired and [he] was released from prison [and] taken back into state custody for a Jimmy Rice hearing" 28 days later, "the present incarceration is unlawful" (Dkt. 1, Attach. at 23). According to Petitioner "there is no authority for civil commitment under the [Jimmy] Ryce Act after actual release from incarceration." *Id.*  Again, no reference is made in this claim to any federal law or Constitutional right.

Lastly, in Ground Four, Petitioner relies solely on *Bello v. State*, 547 So.2d 914, 918 (Fla. 1989), in support of his argument that the state circuit court committed reversible error when it denied counsel's motion for a mistrial on grounds that testimony by Dr. Pritchard that Petitioner was shackled during his interview with Dr. Pritchard "was prejudicial in a civil commitment proceeding to determine whether the [Petitioner] has a propensity for uncontrolled violence" (Dkt. 11, Ex. 26 at 24).  Petitioner's argument in this claim is likewise presented only in terms of state law.

Respondent asserts, *inter alia*, that while the issues raised by Petitioner were presented to the state court on direct appeal, *see Surrency v. State*, 869 So.2d 553 (Fla. 2d DCA 2003) (table decision), because the claims were not fairly presented as federal constitutional claims, they are unexhausted and thus procedurally barred in this Court.  The record supports Respondent's assertion that the issues raised in the petition were raised in state court in state law terms only. These claims are, thus, not properly exhausted in

state court.  *See* 28 U.S.C. § 2254(b).

Title 28 U.S.C. § 2254(b) requires the exhaustion of state court remedies before a federal habeas corpus application will be entertained. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  *See also Henderson v. Campbell*, 353 F.3d at 891 ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)); *Snowden v. Singletary*, 135 F.3d at 735 ("Exhaustion of state remedies requires that the state prisoner fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights") (quoting *Duncan v. Henry*,  513 U.S. 364, 365 (1995)).

Relying almost exclusively[7] on pre-AEDPA case law in his reply to the response, Petitioner argues to the contrary (Dkt. 18 at 1-3). As the *Duncan* court held, clearly and unambiguously, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, *he must say so*, not only in federal court, but in state court." *Duncan v. Henry*,  513 U.S. 364, 365-366 (1995).  As clarified more recently in *Baldwin v. Reese*, a decision focusing upon the requirement of "fair presentation" of a petitioner's claims in state court, the United States Supreme Court held that ["a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" 541

---

[7]Petitioner cites one post-AEDPA case, *Henry v. Dep't. of Corrs.*, 197 F.3d 1361 (11th Cir. 1999) in support of his argument that by presenting "the substance of his claim to the state courts . . . the state courts had an opportunity to apply controlling legal principles to facts bearing upon them, the claims . . . must be deemed exhausted" (Dkt. 18 at 3).  As discussed above, Petitioner's narrow interpretation of the holding in *Henry* is unavailing to his cause.

U.S. 27, 32 (2004).

Having reviewed the record, the Court finds that, like Reese, Petitioner did not "fairly present" the federal dimension of any of his claims to the state courts. Petitioner has, thus, failed to satisfy the requirement that he give the state court an "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Snowden v. Singletary*, 135 F.3d at 735 (citation omitted). *See also Engle v. Isaac*, 456 U.S. 107, 128-29 (1982) ("The state appellate courts [must have] a chance to mend their own fences and avoid federal intrusion.").

A petitioner's claims or portions of claims that are not exhausted but would clearly be barred if returned to state court must be dismissed.  *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993). Here it would be futile to dismiss this case to give Petitioner the opportunity to exhaust the federal dimensions of his claims because they could have and should have been raised on  appeal. Because Petitioner did not present his constitutional claims to the state courts, the claims have not been properly exhausted and are now procedurally barred in state court.

Therefore, unless Petitioner can show either cause and prejudice to excuse the default or that the manifest injustice exception applies to his claims, they are procedurally defaulted in this Court. *See, e.g.*, *Coleman v. Thompson,* 501 U.S. at 735 n.1 (if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes). Cause must ordinarily be something external to the petitioner. *Marek v. Singletary,* 62 F.3d 1295, 1302 (11th Cir. 1995). To show prejudice, Petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and

substantial disadvantage, infecting his entire trial with error of constitutional dimensions."
*United States v. Frady,* 456 U.S. 152, 170 (1982).

"A petitioner is not entitled to a hearing on the threshold issues of cause and prejudice or manifest injustice without first proffering specific facts which support a finding that one of these exceptions to the procedural default rule exists." *Hill v. Jones*, 81 F.3d 1015, 1023 (1996). Petitioner offers no reason for his failure to raise the federal dimensions of his claims in state court, and the Court discerns none that would amount to good cause to overcome a state procedural default. Likewise, Petitioner fails to demonstrate that a fundamental miscarriage of justice will occur if this Court does not reach the merits of his petition. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Without such a showing, a federal habeas court should not even discuss the merits of a claim that has been procedurally defaulted in state court. *Kight v. Dugger*, 50 F.3d 1539, 1543 (11th Cir. 1995).

To the extent Petitioner's claims concern the conditions of his confinement as opposed to the fact thereof, *see* Dkt. 18 at 10-11, such claims do not state a habeas corpus cause of action; rather, they may be a civil rights cause of action under 42 U.S.C. § 1983. *See McKinnis v. Moseley*, 693 F.2d 1054 (11th Cir. 1982).

## Conclusion

For the foregoing reasons, the Court finds that Petitioner has failed to establish that he is entitled to federal habeas relief. *See* 28 U.S.C. § 2254(b)(1).

ACCORDINGLY, the Court **ORDERS** that:

1. The Petition for Writ of Habeas Corpus is **DENIED** (Dkt. 1).

2. The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

**DONE** and **ORDERED** in Tampa, Florida on November 30, 2006.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

SA:jsh

Copy furnished to:

All Parties of Record